SHANTA DRIVER, Bar No. P65007
United for Equality and Affirmative Action Legal Defense Fund (UEAALDF)
19526-B Cranbrook Drive
Detroit, MI 48221
(313) 683-0942 Fax: (313) 586-0089
shanta.driver@ueaa.net, monica.smith@ueaa.net
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| NICOLE CONAWAY, | Case No.: 2:23-cv-12846 |
| Plaintiff, | **COMPLAINT** |
| vs. | • **Americans with Disabilities Act (ADA) (42 U.S.C. §12112)** |
| DETROIT PUBLIC SCHOOLS COMMUNITY DISTRICT, | **DEMAND FOR JURY TRIAL** |
| Defendant. | |
| _____ | |

Pursuant to the Federal Rules of Civil Procedure, Plaintiff, by and through her attorneys, UNITED FOR EQUALITY AND AFFIRMATIVE ACTION LEGAL DEFENSE FUND (UEAALDF), states as follows:

### INTRODUCTION

1. The Plaintiff, Nicole Conaway, is a highly-rated, 17-year-veteran science and mathematics teacher who works for Defendant Detroit Public Schools Community District (DPSCD, "the District"). Her physician has directed her to work from home because her recurrent maxillary sinusitis, allergies, and

1    chronic asthma expose her to severe risk and illness during the COVID-19

2    pandemic.

3    2.  Twenty-six months ago on September 1, 2021, Ms. Conaway requested an

4        accommodation under the Americans with Disabilities Act (ADA) to be able

5        to teach some of DPSCD's many students enrolled in its 100% virtual school

6        from her home, due to her disabilities. To date, DPSCD has rejected Ms.

7        Conaway's request without giving a justification. It voted to terminate her on

8        April 12, 2022 for alleged "job abandonment."

9    3.  On August 31, 2022, the Equal Employment Opportunity Commission issued

10       a Determination Letter that Ms. Conaway was "denied a reasonable

11       accommodation for her disability" (EXHIBIT A, EEOC Determination

12       Letter). On January 11, 2023, the Michigan Tenure Commission ordered

13       DPSCD to reinstate Ms. Conaway, finding that it had arbitrarily and

14       capriciously terminated her, referencing its violations of ADA law and other

15       law. (EXHIBIT B, Tenure Commission Order)

16   4.  Despite these decisions, DPSCD has engaged in a continuing violation of the

17       ADA, continuing to ignore the same request to teach from home that Ms.

18       Conaway made twenty-six months ago.

19   5.  After putatively reinstating Ms. Conaway in January 2023 after the Tenure

20       Commission decision, DPSCD has continued to ignore Ms. Conaway's ADA

accommodation request. It directed her to teach *in-person* on January 18, 2023, forcing her to renew the same ADA accommodation request. When the District held an "interactive meeting" with Ms. Conaway on February 9, 2023, the District summarily rejected her request without justification, and asked her, "if" the District offered her a position teaching students online, could she report to a school building five days a week? She rejected this: this offer did not comply with her doctor's orders which would not pose any undue burden on the District to implement. DPSCD was notified soon after, that Plaintiff was requesting the Department of Justice to act on the EEOC's Determination Letter. The District retaliated against her for exercising her ADA rights, by suspending her pay and benefits.

6. The District has not changed its position. It maintained its position through the 2022-23 school year, when 1,840 students attended the District's Detroit Virtual School ("DVS"). It has engaged in a sham "interactive process" in order to continue denying her right to a reasonable accommodation. Twenty-three months after her initial ADA accommodation request, the District set-up an Independent Medical Examination with an orthopedic specialist—not someone who is qualified to assess her asthma. Ms. Conaway underwent that examination on August 22, 2023, but the District has done nothing since. The

1   District is engaging in dilatory acts to keep her unpaid as long as possible and

2   try to force her to give up asserting her ADA rights.

3   **JURISDICTION AND VENUE**

4   7.  This action arises from Defendants' actions against Plaintiff Nicole Conaway

5   ("Plaintiff") in Detroit, Michigan in Wayne County. This action is brought

6   pursuant to the Family and Medical Leave Act, 29 U.S.C. §2601 *et seq.*, and

7   the Americans With Disabilities Act of 1990, 42 U.S.C. §12101 *et seq.,* and

8   related regulations.

9   8.  Plaintiff resides in Detroit, Michigan. The Defendant is in Detroit, Michigan.

10  The events, acts, and/or omissions complained of herein occurred in Wayne

11  County, Michigan, and this action is properly assigned to the U.S. District

12  Court of Michigan, Eastern District.

13  9.  This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 28

14  U.S.C. § 1343(3).

15  10. On September 23, 2021, Ms. Conaway filed a complaint with the Equal

16  Employment Opportunity Commission (EEOC) against DPSCD for violating

17  the ADA by trying to terminate her for not reporting to work to teach in-

18  person, despite her pending request for an accommodation to teach from

19  home. During the EEOC's investigation, DPSCD voted April 12, 2022 to

20  terminate Ms. Conaway on the alleged charge of "job abandonment." On

August 31, 2022, the EEOC issued a Determination Letter finding that Ms. Conaway "was denied a reasonable accommodation for her disability." (EXHIBIT A) Ms. Conaway's case then went into mediation before the EEOC.

11. In January 2023, when DPSCD was forced to reinstate Ms. Conaway by the Michigan Tenure Commission, DPSCD defied that decision and assigned Ms. Conaway to teach *in-person* at Mumford High School. On January 19, 2023, Ms. Conaway's counsel informed the EEOC mediator of this new development and requested the end of EEOC mediation and for her case to be considered for a lawsuit by the Department of Justice.

12. The EEOC transferred Ms. Conaway's file to the Department of Justice on April 24, 2023.

13. On August 10, 2023, the Department of Justice issued a Right to Sue letter to Plaintiff, informing her that the Department of Justice would not file a suit on her charge. The EEOC case number is 471-2021-03705. (EXHIBIT C, Right to Sue Letter 8/10/2023)

14. This Complaint is filed within 90 days of the receipt of that letter.

15. This action is timely filed within all applicable statutes of limitation.

**PARTIES**

16. Plaintiff Nicole Conaway is a teacher employed by the Detroit Public Schools Community District. She is a resident of Wayne County in the State of Michigan.

17. Defendant Detroit Public Schools Community District ("DPSCD," "the District") is a public entity and an educational service agency established and maintained by the laws and constitution of the State of Michigan, and owns, operates, manages, directs, and employs and/or is responsible for other Defendants in this action.

**ALLEGATIONS**

18. Plaintiff has taught in DPSCD since 2006. She is endorsed by the State of Michigan to teach Secondary (grades 6-12) Mathematics and Science. She regularly obtains excellent teaching evaluations.

19. During the 2020-21 school year, the first full school year after the outbreak of the COVID-19 pandemic, DPSCD gave all teachers the option to teach virtually from home. Ms. Conaway took this option. She did an excellent job teaching her students at Communication Media Arts High School; she earned a "Highly Effective" rating in her 2020-21 year-end Summative Evaluation.

20. Plaintiff has medical diagnoses of moderate persistent asthma, chronic allergies and rhinitis, and suffers frequent respiratory infections. She has had

1    episodes of respiratory distress that have resulted in going to the emergency

2    room.

3    21. The Centers for Disease Control and Prevention ("CDC") indicate that her

4    conditions make her high-risk for severe illness and death from COVID-19.

5    *2021-22 school year*

6    22. As detailed below, in the 2021-22 school year, DPSCD refused to consider

7    Ms. Conaway's request for an accommodation to teach from home. It broke

8    off the ADA interactive process and voted on April 12, 2022 to terminate Ms.

9    Conaway for alleged "job abandonment." <u>The EEOC issued a Determination</u>

10   <u>Letter on August 31, 2022, finding that Ms. Conaway was "denied a</u>

11   <u>reasonable accommodation for her disability." (EXHIBIT A) The Michigan</u>

12   <u>Tenure Commission ordered DPSCD to reinstate Ms. Conaway on January</u>

13   <u>11, 2023. (EXHIBIT B)</u>

14   23. Starting in Fall 2021, DPSCD required teachers to report to schools and teach

15   classes in-person. It also established a permanent virtual-learning program,

16   the Detroit Virtual School (DVS). Demand was overwhelming: thousands of

17   Detroit families enrolled their children in the program to protect their health

18   and the community.

19   24. On August 9, 2021, Plaintiff applied for an assignment at DVS. The Letter of

20   Agreement between her union and DPSCD gave priority to teachers who

1    could establish that they had a medical condition that made them susceptible

2    to COVID-19. Ms. Conaway submitted such documentation from her doctor.

3    But on September 1, 2021, DPSCD rejected her application to teach at DVS.

4    25.On September 1, 2021, Plaintiff applied for ADA accommodation to teach

5    virtually. With her request she submitted a letter from her physician. On

6    September 2, 2021, Conaway replied via email to Virtual Learning Director

7    Julie Alspach, informing her of her doctor's letter and ADA request and

8    asking to be reconsidered for a virtual teaching position.

9    26.Detroiters, protecting their families and themselves, applied to DVS in large

10    numbers for their children to stay in virtual learning.

11    27.DVS was in desperate need of teachers. On August 31, 2022, at the hearing

12    before the ALJ, Terrence Martin, the president of the Detroit Federation of

13    Teachers (DFT), testified to the conditions at DVS:

14    A: We certainly didn't anticipate for the thousands and thousands of students
     to be there… This caused a level of hardship on our teachers because those
15    class sizes were extremely high in most of those classes… [W]e saw class
     sizes that exceeded 50-plus in some courses… We… expressed a need for
16    additional staff and for them to open up recruitment for the virtual school
     considering the numbers… [T]here was a need for teachers in pretty much
17    every discipline in the virtual school… I think that the students of Detroit
     would have benefited
18    Q: And do you think that stopping Ms. Conaway from working from home
     five days a week remotely served the students of Detroit?
19    A: No, I think that the students of Detroit would have benefitted from allowing
     Ms. Conaway to work five days a week considering the stress, strain and
20    hardship the increased class sizes placed on those teachers at the virtual

school during that period of time. Again, the numbers in those classrooms were astronomical.

28. On the evening of September 14, 2021, Plaintiff spoke to the DPSCD School Board at its regular scheduled meeting, stating that they must correct the shortage of teachers in virtual programs and hire teachers who want to continue teaching while keeping themselves and their families safe. She criticized DPSCD policies that violated the ADA and the Family and Medical Leave Act (FMLA) rights of DPSCD employees seeking to protect their lives and other people's lives during the COVID pandemic.

29. Plaintiff filed an ADA complaint with the Equal Employment Opportunity Commission (EEOC) on September 23, 2021.

30. On September 28, 2021, DPSCD contacted Ms. Conaway and scheduled an ADA interactive-process meeting for September 30, 2021.

31. On the day of that meeting, DPSCD canceled the meeting. In lieu of a meeting, DPSCD sent Ms. Conaway an offer of "accommodation" to teach at DVS, but she had to teach from a school building two days a week while sharing a classroom with another teacher. Further, "further accommodation could include unmasking while in the classroom…"

32. Ms. Conaway told DPSCD that this violated her doctor's orders. Further, there was no reason why teachers at DVS had to report in-person when the students were learning 100% online.

33. Plaintiff's request for ADA accommodation is reasonable. She continues to be able to perform all the essential functions, including providing instruction, recording student attendance, assessing students, maintaining a gradebook, conducting parent-teacher conferences, and attending staff meetings and professional developments while working online. Since her school closed to the pandemic on March 13, 2020 and through the end of 2020-21 school year, she taught remotely, and she did so highly effectively. DPSCD evaluated her as "Highly Effective," DPSCD's highest rating, for the 2020-21 school year.

34. On October 11, 2021, DPSCD sent a letter to Plaintiff saying that it needed "additional medical information" before making a determination on her accommodation request. Second, it asked her to sign an "ADA Medical Authorization" for DPSCD to seek medical records and to *speak directly* with her physicians. DPSCD had no right to require Ms. Conaway to violate her medical privacy rights, according to the EEOC's guidance on disability-related inquiries.[1]

35. The EEOC's guidance states that DPSCD is entitled only to "reasonable documentation." This is "This is "only the documentation that *is needed* to establish that a person has an ADA disability, and that the disability

---

[1] "Enforcement Guidance on Disability-Related Inquiries and Medical Examinations of Employees under the ADA" (Issued July 26, 2000). Available at: https://www.eeoc.gov/laws/guidance/enforcement-guidance-disability-related-inquiries-and-medical-examinations-employees

necessitates a reasonable accommodation." (EEOC Guidance, emphasis added) Ms. Conaway's medical certification already had been sufficient to establish her disability and why she needed the accommodation requested.

36. Further, an employer may not have oral communications with a physician in the absence of express authorization from a patient of the specific questions that will be asked of the doctor: "The individual can be asked to sign a limited release allowing the employer to submit *a list of specific questions* to the health care or vocational professional." (EEOC Guidance.) The District's form gave no such list of "specific questions."

37. On October 18, 2021, in response to the District's request for "additional medical information," Plaintiff sent three additional letters from her physicians further documenting her conditions and the requirement that she work from home.

38. On November 5, 2021, Plaintiff's counsel sent a letter to DPSCD objecting to the District's request to waive her privacy rights and to DPSCD's failure to respond to her additional new medical documentation.

39. On January 13, 2022, DPSCD closed Plaintiff's ADA Accommodation Request, citing her unwillingness to waive her privacy rights and stated falsely that she had not provided medical information. It did not address Plaintiff's

1    objections to the request to waive her privacy. It did not address her additional

2    medical documentation.

3    40. In January 2022, DPSCD was forced to return to 100 percent virtual learning

4    due to the Omicron outbreak. All teachers conducted their teaching from home

5    during that month. DPSCD initially told Ms. Conaway she had to withdraw

6    her ADA accommodation request, in order to receive a virtual teaching

7    assignment like every other DPSCD teacher. Her counsel objected to this

8    request as blatant retaliation. DPSCD relented, and allowed Ms. Conaway to

9    teach virtually in this period. Ms. Conaway worked as the district went fully

10   online. District returned to in-person education in early February 2022.

11   41. In February 2022, DPSCD returned to in-person instruction. The District had

12   some snow days and additional fully-online-instruction days; she taught

13   virtually on February 18, 2022. Also, on February 18, 2022, DPSCD sent

14   Plaintiff a "Notice of Termination," charging her with "job abandonment" and

15   notifying her that the DPSCD Board of Education would vote on this

16   recommendation of termination.

17   42. The Board voted on April 12, 2022 to terminate Ms. Conaway. At the meeting,

18   DPSCD Superintendent Dr. Nikolai Vitti disclosed Ms. Conaway's private

19   medical information in the public meeting, claiming (wrongly) that her asthma

20   was not covered under the ADA. The Tenure Commission observed in its

January 11, 2023 decision, that Congress amended the ADA in 2008 after some decisions did not consider asthma as a qualifying disability; now asthma and allergies are usually considered disabilities under the ADA. (EXHIBIT B, at 6-7)

*Findings that DPSCD violated the ADA and Ms. Conaway's tenure rights*

43. Ms. Conaway exercised her rights as a Michigan tenured teacher and appealed her termination to the Michigan Teacher Tenure Commission under the Michigan Teachers' Tenure Act.

44. On August 22, 2022, the EEOC investigator for Plaintiff's ADA complaint wrote that she would recommend a finding that DPSCD denied her a reasonable accommodation and discharged her due to her disability. She wrote:

While Detroit Public Schools Community District argued that you ended the interactive process when you refused to sign its October 11, 2021 medical authorization form, the evidence indicates you did provide the district sufficient medical information from your physician and ENT specialist on October 12, 13 and 18, 2021 for the interactive process to continue. Furthermore, the district failed to prove that allowing you to work remotely as a reasonable accommodation would have caused an undue hardship. The Virtual School already offered teachers the ability to work remotely three days a week, so an additional two days as a reasonable accommodation would not have created a significant burden or expense for the district because students were 100% virtual.

(EXHIBIT D, EEOC Investigator 8/22/2022 email)

45. On August 31, 2022, the EEOC issued a Determination Letter finding that Ms. Conaway was denied a reasonable accommodation and was discharged due to her disability. (EXHIBIT A)

46. After a five-day hearing before an Administrative Law Judge (ALJ), the ALJ for Ms. Conaway's tenure appeal issued a Preliminary Decision and Order on November 21, 2022 reversing DPSCD's termination of Ms. Conaway. The ALJ found that the termination was "arbitrary and capricious." Among other acts, DPSCD had failed to consider Ms. Conaway's accommodation request; her request would not have imposed an "undue hardship" on the District. (EXHIBIT E, ALJ Preliminary Order, pp. 37-38, 42)

47. DPSCD appealed the Preliminary Order to the Tenure Commission.

48. On January 11, 2023, the full Commission denied the appeal. It affirmed the ALJ's findings and found, among other things, that (a) DPSCD acted on a "mistaken understanding of the law" by treating Ms. Conaway's asthma as ineligible for ADA accommodation (EXHIBIT A, p. 5-7); (b) DPSCD failed to consider her accommodation request to teach from home (EXHIBIT A, p. 17-18); and (c) DPSCD would not have had any "undue hardship" under the ADA if it had granted her request (EXHIBIT A, p. 17).

*DPSCD's continuing violations in 2023*

49. DPSCD "reinstated" Ms. Conaway in name only. At the January 17, 2023 School Board meeting, Superintendent Vitti said he would require Ms. Conaway to report "in person" at a school site. On January 18, 2023, DPSCD assigned her to teach *in-person* at Mumford High School starting on Monday, January 23, 2023.

50. On January 24, 2023, Ms. Conaway renewed her request for an ADA accommodation to teach remotely from home. This was the same request she made in September 2021 that was ignored by DPSCD, then rejected, then led to DPSCD's April 12, 2022 vote to discharge her.

51. DPSCD has rejected Ms. Conaway's request because it does not acknowledge asthma as a qualifying disability. Vitti, in defiance of this Commission, stated at the January 17, 2023 School Board meeting that he "stand[s] by" his violation of the law: "A lot of public comment today about Nicole Conaway's case... [E]verything I told the Board was what I knew. The comments that I made in public were the same opinion given by a federal judge regarding asthma and FMLA. *So I stand by the recommendation that I made*, and all the information that I used and was shared to the Board, to myself, or through legal counsel."

52. On February 7, 2023, DPSCD issued a paycheck to Ms. Conaway compensating her for 80 hours from January 14 to January 27, 2023. This was pursuant to the Commission's order to reinstate her. Twenty-four of these hours were deducted from Ms. Conaway's sick bank, which still had twenty-eight (28) hours.

53. On February 9, 2023, Ms. Conaway met with Mr. Braa Ganem, Leave Manager for DPSCD. Mr. Ganem rejected Ms. Conaway's request to teach from home and gave no reason for this.

54. DVS had an enrollment of 1,840 students enrolled in its 100-percent virtual learning program during the 2022-23 school year. With only 43 teachers assigned and a 42.79 student-to-teacher ratio, class sizes were well above contractual class size limits, and so there was a need for more teachers.

55. At the February 9, 2023 meeting, Mr. Ganem proposed that Ms. Conaway teach students in-person while wearing a mask and having an air purifier in the room. Ms. Conaway rejected this. He asked, "if" the District could transfer Ms. Conaway to the Detroit Virtual School, would she accept reporting to the building and teaching students from the building? This was worse than the District's offer in Fall 2021 to teach at DVS three days a week from a school building and two days from home.

56. On January 19, 2023, Ms. Conaway's counsel told the EEOC mediator that, because DPSCD was continuing to violate the ADA and clearly would not engage in good faith in mediation, she wanted to elevate her case to the Department of Justice. On February 23, 2023, the EEOC responded that it would end the mediation process and notify DPSCD of Plaintiff's decision.

57. DPSCD retaliated against Ms. Conaway after she made clear she would continue to follow her doctor's orders at the February 9 meeting, and after she elevated her ADA case.

58. Ms. Conaway had 28 hours remaining in her sick bank. (EXHIBIT F, Pay Advice 2/7/2023). She had been continuing to call in sick after the January 14-27, 2023 pay period for which she was paid on February 7. Under the DPSCD/DFT contract, she was also entitled for compensation for personal business days, personal emergency days, and holidays. From January 30 through February 24, 2023 the District credited her for sick days, personal business days, personal emergency days, and district-closure days pursuant to the contract. (EXHIBIT G, DPSCD Timesheets) However, the District cut-off Ms. Conaway's pay: she did not receive her paycheck due on February 21 for these reported days. To date, the District refuses to pay for any of these dates. The District is retaliating against Ms. Conaway for following her doctor's orders.

59. The District has held hostage Ms. Conaway's sick pay, personal-leave pay, personal-emergency pay, and holiday pay to which she was contractually entitled.

60. DPSCD is engaging in a sham ADA "interactive process." Superintendent Vitti stated at the School Board meeting on May 16, 2023: "Nicole Conaway's position was offered to her in January. The students at Mumford are waiting for her arrival."

61. By doing so, DPSCD is excluding Ms. Conaway from teaching due to her physical disability.

62. On May 25, 2023, at a "parent listening session" with Superintendent Vitti, DPSCD Assistant Superintendent Georgina Tate announced that there would be virtual summer school classes for high school students. One of the schools holding virtual classes is Mumford High School. When Ms. Conaway asked Mr. Ganem to teach one of those classes, he rejected her request.

63. More than nine months have passed since Ms. Conaway's "interactive process" meeting with DPSCD, and there has been no progress on her request: only continued harassment.

64. On May 26, 2023, DPSCD sent a questionnaire to Ms. Conaway's doctor and to her, which included the fabrication that a "requirement" of her job was to

teach in-person, which was not true. This requirement is not listed in the job description published by DPSCD.

65. Even though the EEOC and this Commission found Ms. Conaway's disability to be established, DPSCD directed Ms. Conaway to submit to an Independent Medical Examination (IME) with Dr. Shlomo Mandel, an orthopedic surgery specialist. Ms. Conaway is not seeking accommodation for an injury, and Dr. Mandel is not qualified to treat asthma or allergies.

66. Ms. Conaway attended the IME on August 22, 2023. Two months passed in which DPSCD did not send Ms. Conaway any findings from the IME. On October 27, Plaintiff's counsel asked DPSCD to produce these records. As of the date of this filing, Plaintiff has still received nothing.

67. Since the February 9, 2023 meeting, DPSCD has made no offer of accommodation to Ms. Conaway. Instead, it has carried on an endless show of an "investigation." To date, it has given no reason why Ms. Conaway's doctor's certification are insufficient and given no reason why DPSCD cannot grant her accommodation request.

68. These dilatory acts have continued to prevent Ms. Conaway from teaching.

69. DPSCD has been denying Ms. Conaway a reasonable accommodation and has held her in limbo in an interminable "interactive process." Her accommodation request is the same request she submitted to DPSCD on

1  September 1, 2021. Since then, two agencies that investigated DPSCD's

2  conduct found that it is acting unlawfully by failing to consider the

3  accommodation she has been requesting for more than twenty-six (26) months

4  now.

5  70. During this endless "interactive process," DPSCD stopped giving pay and

6  benefits to Ms. Conaway. After putatively "reinstating" her, DPSCD paid her

7  on February 7, 2023 pursuant to days in her sick bank. But after she did not

8  accept an unacceptable "accommodation" at the February 9, 2023 ADA

9  interactive-process meeting, DPSCD held her pay and benefits hostage.

10  71. DPSCD has been retaliating against Ms. Conaway for asserting her rights

11  under the ADA. In addition to the above, the District refuses to acknowledge

12  it owes her any money from February 18, 2022 to January 11, 2023, the period

13  DPSCD stopped paying her pursuant to its suspension and vote of termination

14  for alleged "job abandonment." The Michigan Teacher Tenure Act states that

15  a district "shall" pay a teacher's salary during the pendency of their tenure

16  appeal. MCL 38.103(2). After Ms. Conaway's counsel made repeated efforts

17  to reach DPSCD, DPSCD counsel replied on March 22, 2023: "[D]o you have

18  anything to show that your client tried to mitigate her damages [sic], IF we

19  agreed that if we owed her some back pay?" (emphasis in original).

20

72. DPSCD is using every means at its disposal to retaliate against and harass Ms. Conaway, to force her to quit, for asserting her rights under the ADA.

73. DPSCD can make no claim that granting Plaintiff's accommodation request to teach from home would cause an "undue hardship." Enrollment in the DVS Program remains high due to the COVID-19 pandemic, and all instruction is 100% virtual. The EEOC has found that DPSCD is discriminating against Ms. Conaway for her disability.

## COUNT ONE:
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

74. Plaintiff incorporates by reference the allegations of the preceding paragraphs.

75. Plaintiff has moderate persistent asthma, recurrent maxillary sinusitis, and allergies which require her to work from home during the pendency of the COVID-19 pandemic.

76. Ms. Conaway's medical conditions are recognized disabilities under the Americans with Disabilities Act (ADA). Further, risk of severe illness and death from COVID-19 is part of the totality of the circumstances. *Peeples v. Clinical Support Options, Inc.,* 487 F.Supp. 3d 56, 63 (D. Mass. 2020); *Silver v. City of Alexandria,* 470 F.Supp.3d 616, 622 (W.D. La. 2020)

77. Defendant's failure to provide Plaintiff with a reasonable accommodation that would enable her to remain employed constitutes illegal discrimination

against Plaintiff on the basis of her disability in violation of the ADA. 42 U.S.C. §12112.

78. On August 31, 2022, the Equal Employment Opportunity Commission issued a Determination Letter that Ms. Conaway was "denied a reasonable accommodation for her disability" (EXHIBITS A, D).

79. DPSCD, since being compelled to reinstate Plaintiff after Michigan's Teacher Tenure Commission ordered it to, continues to deny Ms. Conaway, without explanation, the same accommodation she requested on September 1, 2021. At least twenty-six (26) months have passed since she first made her request.

80. DPSCD has been retaliating against Ms. Conaway for asserting her rights under the ADA, refusing to pay her salary from February 18, 2022 to January 11, 2023. Even though DPSCD's charge of "job abandonment" was reversed by the Michigan Teacher Tenure Commission, DPSCD refuses to pay Ms. Conaway for the pay and benefits lost due to DPSCD's suspension and attempted termination of her. When Ms. Conaway asserted her rights under the ADA in February 2023, DPSCD again stopped her pay and benefits.

**JURY DEMAND**

81. Plaintiff hereby demands a jury trial in this action.

**PRAYER**

WHEREFORE, Plaintiff respectfully requests the following relief against

Defendant:

1. Compensatory damages and punitive damages for mental anguish and pain

and suffering caused by Defendant's actions.

2. Reasonable attorneys' fees, together with litigation expenses and costs of suit.

3. Such other relief as the Court deems appropriate.

By Plaintiff's Attorneys,
UNITED FOR EQUALITY AND
AFFIRMATIVE ACTION LEGAL DEFENSE
FUND (UEAALDF)

BY:   _/s/ Shanta Driver_____

Date: November 8, 2023